## Babcock and another *against* Porter.

On the trial of a *scire-facias* in foreign attachment, wherein *A* was plaintiff, *B* the original debtor, and *C*, the trustee of *D*, under an assignment for the benefit of his creditors, the garnishee, the defence was, that the effects in the hands of *C*, which *A* sought to recover, belonged to *E*, and not to *B*. In support of this claim, the principal witness was *W*, a partner of *E*. His credibility was assailed, on the ground of his interest in the event of the suit; on account of the exceptionable mode in which he had caused the claims against *D's* estate to be presented to the commissioners; by reason of his management in procuring an order from *B*, for the dividend on *D's* estate; by reason of the entries in the books of the company, of which he was a member; his want of recollection as to facts which it is presumable he would remember; and some other circumstances, unfavourably affecting his testimony; while his credibility was supported, by his general good character for veracity, shown by the absence of any attempt to impeach it; the want of any evidence directly contradicting him; the character of the facts relied upon against his credibility, as being susceptible of explanation; and the explanations given by him. These topics, with others bearing upon his credibility, were fairly submitted to the jury, and considered by them. After a verdict in conformity to this testimony, it was held, that although the court would have been better satisfied with a different result, yet the verdict was not so manifestly and palpably wrong, as to induce the court to disturb it.

This was a *scire-facias*, in a process of foreign attachment, under the statute of 1846, wherein *Amasa C. Hall* was proceeded against as the principal debtor, and *James Porter*, as garnishee. The service of the writ in the original suit, was made on the 17th of *December*, 1846.

The defendant pleaded the general issue; on which the cause was tried, at *Brooklyn, January* term, 1850.

On the trial, it was admitted, that the plaintiffs, in their action against *Hall*, recovered a judgment against him, at the term of the superior court held in *January*, 1848, for 1102 dollars, 5 cents, damages, and 37 dollars, 53 cents, costs. It was also admitted, that on the 2d of *March*, 1846, *Daniel Warner* made an assignment of his property, under the statute of 1828, in trust for the benefit of all his creditors; that *James Porter*, the defendant in this suit, was, by the court of probate, appointed trustee, to execute the trust; that he gave bonds for the faithful performance of his duties, and immediately took into his hands the property assigned; that commissioners were appointed to receive, examine and allow the claims of creditors; that at a meeting of the commissioners,

on the 6th of *October*, 1846, four promissory notes, and a book account in favour of *Hall* against *Warner*, were presented to them for allowance; that on the 27th of *October*, 1846, the commissioners made their report to the court of probate, allowing such claims in favour of *Hall* against *Warner*, amounting to 2740 dollars, 51 cents; which report was accepted, by the court of probate; that on the 28th of *April*, 1847, the court of probate, from the avails of such estate in the defendant's hands, declared a dividend of $27\frac{19}{20}$ cents of the dollar of the claims allowed; that the amount of the dividend upon the claims allowed in favour of *Hall* against *Warner*, was 766 dollars, 5 cents; and that on the 27th of *October*, 1846, the defendant received a written order from said *Hall*, dated at *New-York*, the same day, directing him to pay to *Horace Whitaker*, the dividend on his, (*Hall's*) claims; which, in *May*, 1847, was accordingly paid by the defendant.

The plaintiffs claimed, that they were entitled to recover of the defendant the whole amount of the dividend on the several claims allowed against *Warner's* estate, in favour of *Hall*, with interest thereon.

The defendant claimed, that the plaintiffs were not entitled to recover of him the whole, or any portion, of such dividend, because *Horace Whitaker*, and not *A. C. Hall*, was the owner of the claims in question, at the time when the original writ was served. And he claimed further, that if the jury should find, that those claims did not belong to *Whitaker*, but were actually the property of *Hall*, at the time of the service of the original writ, then the plaintiffs were not entitled to recover, because, in the first place, the only effects in the defendant's hands belonging to *Hall*, were held by him as trustee of *Daniel Warner*, and not in his individual capacity only; and secondly, because the statute of 1846, under which the original process of foreign attachment was commenced, was repealed, before this suit was brought, and the lien created by the service of the original writ, was thereby destroyed.

In opposition to these claims of the defendant, the plaintiffs claimed, that the defendant was the trustee of *Hall*, to the extent of the dividend declared upon *Hall's* claims; and that the description of him in the original writ, was therefore sufficient. They also claimed, that the repeal of the statute re-

*Windham,*
*July, 1850.*

Babcock
*v.*
Porter.

ferred to by the defendant, did not take away from the plaintiffs the right of bringing and maintaining this action.

The principal witness on the part of the defendant, was *H. Whitaker,* who testified as follows. Two of the notes—one for 1347 dollars, 97 cents, and the other for 400 dollars—belonged to *Whitaker, Hammond & Co.,* of which firm the witness was a member. These notes, *Whitaker, Hammond & Co.* received from *Hall,* shortly after their dates. At maturity, they were not paid, and *Whitaker, Hammond & Co.* took them up. The note for 1347 dollars, 97 cents, was discounted at the *Windham County Bank;* and the note for 400 dollars, he, (the witness,) thinks, was discounted at the *Quinebaug Bank;* but this he cannot state positively. The two other notes were handed over to *Whitaker, Hammond & Co.* to receive the dividend upon them, in part payment of a claim which they, *Whitaker, Hammond & Co.* had against Mr. *Hall.* After *Whitaker, Hammond & Co.* heard that *Warner,* the maker of these notes, had failed, I went up to *Woodstock,* and saw him, and made inquiries in relation to his circumstances. I told him, that *Whitaker, Hammond & Co.* had discounted the notes which he gave to *Hall,* and that they had a joint interest with *Hall* in one of them. At one of the meetings of the commissioners, I went up to adjust a claim which I held individually against *Warner,* and found, that the commissioners had entered the claims in favour of *Hall* upon their *memorandum,* in the name of *Whitaker, Hammond & Co.* I requested the commissioners to change the entry to *A. C. Hall,* as suits upon the notes had previously been commenced in the name of *Hall,* and I did not know but those suits might be affected, in some way, if the notes were proved in the name of *Whitaker, Hammond & Co.* The suits were commenced by *Edmund Perkins,* Esq. At the time the notes were handed to him, I asked him in whose name the suits should be commenced, *Whitaker, Hammond & Co.,* or *Hall's?* He said, it would make no difference; and I told him to commence them in the name of *Hall,* as I did not wish to have it known that I was so large a creditor of *Warner.* I am unable to state when I received from *Hall* the notes for 600 dollars, and 277 dollars, 45 cents.

*On cross-examination,* he testified, that he had never examined the books of *Whitaker, Hammond & Co.,* containing

their accounts with *A. C. Hall*, more than one hour; and that was after he received notice from the plaintiffs' counsel, to produce them, on this trial. After *Whitaker*, *Hammond & Co.* went into partnership, *Hall* went to *New-York*, and they agreed with him to pay him a commission for purchasing goods for them; they also gave him the privilege of buying certain goods, and charging them to *Whitaker, Hammond & Co.* in joint account with him; they agreeing to share with him the profits and loss upon their sale.

*Windham,*
*July, 1850.*

Babcock
*v.*
Porter.

[The witness here introduced the books of *Whitaker, Hammond & Co.* containing their accounts with *A. C. Hall*. A transcript of such portions of said accounts as are material in this case, was exhibited.]

The witness then proceeded as follows. There are four accounts with *Hall,* on the ledger; a cash account, a joint account, a cotton account, and a general account. The cash account commenced *March* 4th, and closed May 30th, 1846. A settlement of this account was made, and a balance struck, on the 10th of *April*, 1845. The amount due *Hall,* was 639 dollars, 63 cents, which was credited to him in new account. Another settlement of this account was made on the 29th of *May,* 1845, and there was then a balance against Mr. *Hall,* of 364 dollars, 19 cents, which, on the 30th of *May,* was charged to him in new account. The only additional item in this account, is a charge of 55 dollars, *May* 30th, 1845, which, with the balance of 364 dollars, 19 cents, making 414 dollars, 19 cents, was transferred to the general account.

The general account commenced *May* 30, 1845. The first balance of this account was struck, on the day it commenced. The amount was only 127 dollars, 88 cents. The second balance was struck *June* 11, 1845. There was then 254 dollars, 90 cents, due to Mr. *Hall,* which was paid in cash. Another balance was struck, *June* 26th, 1845. The amount then due *Hall,* was 195 dollars, 76 cents, which was paid in cash. Another balance was struck *August* 4, 1845. The amount then due *Hall,* 178 dollars, 34 cents, was settled by our note at six months. We settled again, *August* 25, 1845, and found due *Hall,* 393 dollars, 71 cents, which was paid him in cash. There was another settlement, on the 8th of *December,* 1845. There was then due *Hall,* 833 dollars, 99 cents, which was credited to him in new account. To make

this balance, there is a credit of 1142 dollars, 14 cents, for a note of *J. C. Hayward*, which was left with us, by *Hall*, to be discounted.  On the 2d of *February*, 1846, the account was again balanced, and an amount of 346 dollars, 61 cents, found due to *Hall*, which was settled, by our note at 4 months from *January* 27th.  The account remained open from that time until the 29th of *February*, 1848 ; when it was again settled, and a balance found due to *Whitaker, Hammond &* *Co.* of 539 dollars, 27 cents, which is transferred to the books of *Hammond, Warren & Co.*  On the 21st of *March*, 1846, *Whitaker, Hammond & Co.* paid *Warner's* note for 1347 dollars, 97 cents, and charged it to Mr. *Hall*, in account ; and on the 19th of *May*, 1846, they paid the 400 dollar note, and charged that to Mr. *Hall*.  There are two of the notes which were allowed in favour of Mr. *Hall*, against *Warner's* estate. I have never looked over these books with Mr. *Hall*.  I never made an examination with him of his books.  *Hall* was a witness at the former trial of this case.  He came at my request.  I have said nothing to him about being a witness on this trial.  He was at *Norwich*, last week ; but I am not able to say when he arrived there.  I saw him in the office of the steam-boat company.  I don't know but my counsel said something to me about *Hall*.  But I had no conversation with any one, either with my counsel or partners, about his attending this trial.  Mr. *Edmund Perkins* might have suggested to me, whether it was important that *Hall* should be here, though I cannot say as he did.  I left the matter altogether with my counsel.  I cannot say, whether I have had any communication with *Hall* about this suit, or not.  I sent to him an order to sign, directing the trustee on the estate of *Daniel Warner*, to pay to me the dividends on his claims against that estate.  I sent a verbal communication to him, at the same time, that some process was on foot,—but what I did not know.

[The order referred to by the witness, was here exhibited by him, and read.  He then continued his testimony as follows.]  This order was written by me, in *Norwich*, and sent by Mr. *O. D. Day*, to Mr. *Hall*, who was then in *New-York*, to sign.  Mr. *Day* was, at that time, in the employ of *Hall*. He came down from the *North*, in the evening train of cars and I asked him, if he would take the order to *Hall*, that night,

and get him to sign it, and return in the *Long-Island* train of cars, the next morning, and carry it to the commissioners on *Warner's* estate.  He said he would, and did so.  I did this, by the advice of my counsel, Mr. *Perkins*.  I heard, that a copying process was on foot ; and I did not know but there might be some informality about it, as the claims were proved in *Hall's* name.  I therefore consulted Mr. *Perkins*, and he advised me to have the order drawn.  I do not recollect whether I paid Mr. *Day's* expenses in going to *New-York*, to get the order signed, or not.

*Whitaker, Hammond & Co.* have credited Mr. *Hall* with the dividend on the whole amount of the claim proved in his name against *Warner's* estate, under date of *May* 10, 1847. The amount of the dividend was 766 dollars, 5 cents.  Two of the notes allowed against *Warner's* estate in favour of *Hall*, the one for 600 dollars, and the one for 277 dollars, 45 cents, are not credited on my books.  As I have stated before, those notes were handed to *Whitaker, Hammond & Co.* to receive the dividend upon them.  I am unable to state when or where the arrangement was made, that I should receive the dividend upon these two notes ; but it was about the time the notes were sued.  The notes for 1347 dollars, 97 cents, and 400 dollars, are entered to *Hall's* credit on the books, but the entry of the large note is not carried on to the ledger.  The 400 dollar note is credited in the cotton account.  There are some entries on the journal, which show, that the transaction respecting the large note was closed at the time, by my remitting to *Hall* the amount that was due to him for it, after deducting my share of the profits on the sale of the cotton for which it was given, and sundry expenses.

*Daniel Warner,* also a witness for the defendant, testified, that *Horace Whitaker* was present at one of the meetings of the commissioners on my estate, and told them, that as there was a suit pending upon the notes in *Hall's* name, they might as well be put down in *Hall's* name in their report.

On cross-examination, he testified, that these notes were given for cotton, which he bought of *A. C Hall*, in *New-York*. The bills of the cotton were made out in the name of *Hall* alone.  They were written—"*Daniel Warner* bought of *A. C. Hall.*"  I compromised these claims with Mr. *Whitaker,*

who had a power of attorney from *Hall* for that purpose.   I think I have the power of attorney, but it is at home.   It speaks of the claims as belonging to *Hall,* and gives Mr. *Whitaker* power, in *Hall's* name, to settle and discharge them.

*Oliver Morse,* a witness for the defendant, testified, that he was one of the commissioners on *Daniel Warner's* estate. Mr. *Whitaker,* or *E. Perkins,* Esq., presented the claims that were allowed in favour of *A. C. Hall.*   They were entered in the *memorandum* of claims to *Whitaker, Hammond & Co.*   Mr. *Whitaker* stated to the commissioners, that the claims were his, but a suit had been commenced upon them, in the name of *Hall,* and on that account, he said, he thought they had better be allowed in Mr. *Hall's* name ; and that is the reason why they were so entered in the commissioners' report.

The defendant here laid in sundry documents, referred to by some of the witnesses, but which it is not necessary, for the present purpose, to detail.   He then rested.

*Orange D. Day* was then called as a witness, by the plaintiffs, and testified, that he took the order, before-mentioned, from Mr. *Whitaker,* in the evening, and went to *New-York* with it, and got it signed by Mr. *Hall,* and returned the next morning, by the *Long-Island* train of cars, and carried it to the commissioners on *Daniel Warner's* estate.   The reason that Mr. *Whitaker* assigned for wanting me to go, was, that Mr. *Brewer* had trusteed the debt due from Mr. *Warner* to Mr. *Hall ;* and he thought it might have been done too early, as the process was served before the commissioners had made their report ; and he wanted, he said, to get the transfer made and put into the hands of the commissioners, before they made their report ; so that in case of any informality in the proceeding, he could hold the debt.   He assigned no other reason.   He told me to get my expenses of Mr. *Hall,* and Mr. *Hall* paid them to me.   I was then in the employ of Mr. *Hall.*   I called on Mr. *Hall,* at the *Western Hotel,* as soon as I reached *New-York,* which was early in the morning, and told him my business ; that Mr. *Whitaker* had requested me to bring the order, and get him to sign it, in consequence of a copying process, which was on foot, to get hold of the dividends on the *Warner* debt ; and that he wanted me to get back as soon as possible, so that the order could be placed in

the commissioners' hands before they made their report. *Hall* took the order and signed it. While signing it, he said it was too late—it was no use for me to go back with the order—it was too late—the debt was gone.

The defendant recalled *Daniel Warner,* who testified, that he had a conversation with Mr. *Day,* (the plaintiffs' witness,) on board of the cars, or steam-boat, he did not recollect which. In that conversation, *Day* spoke about *Hall's* cheating him in business—said he meant to come up with him—and when the cause was tried, they expected him to come on and testify ; but he, (the witness,) could not state precisely what Mr. *Day* said about the matter.

Upon the evidence above stated, and the claims of the parties respectively, the court charged the jury, *pro forma,* as requested by the plaintiffs ; and the jury thereupon returned a verdict in their favour, for a part only of the sum claimed by them. They thereupon moved for a new trial, on the ground that the verdict was manifestly against the weight of evidence in the cause.

The court reserved the case, for the advice of this court, on the questions arising thereon.

*Strong* and *J. A. Hovey,* in support of the motion, contended, 1. That it was not necessary to set forth, in the original process, the special character or right, in which the defendant, in this suit, held the property of *Hall,* the absconding debtor.

2. That the repeal of the statute of 1846, relating to foreign attachment, did not divest the plaintiffs of the right to recover, in this action, the amount due to *Hall,* from the estate held by the defendant for the benefit of *Warner's* creditors.

3. That the verdict of the jury in respect to the amount of damages, is manifestly and palpably against the weight of evidence, and does great injustice to the plaintiffs. They were entitled to recover the amount of the dividend declared in favour of *Hall,* not upon the book debt only, but upon the several notes that were proved and allowed in his name. [To this point, the arguments of counsel were principally directed, examining and commenting on all the evidence ; but the decision of the court renders it unnecessary to follow them,

*Windham,*
*July, 1850.*

*Babcock*
*v.*
*Porter.*

except upon the credit due to *Whitaker's* testimony ; as to which they remarked to the following effect.]

The only evidence offered to sustain the claim set up by the defence, that the notes proved and allowed in the name of *Hall,* were not in fact his property, was that of *Horace Whitaker.* He swore, that the notes for 1347 dollars, 97 cents, and 400 dollars, belonged to the firm of *Whitaker, Hammond & Co.,* of which he was a member ; and that the two other notes were handed to that firm to receive the dividends upon them, in part payment of a debt due to them from *Hall.* Neither *Hall,* nor any member of the firm of *W. H. & Co.* except Mr. *Whitaker,* was, for some reason, called to the stand. *Hall* knew all the facts in the case, and his testimony might have been had by the defendant, if he had deemed it important ; but he did not probably so deem it.

The uncorroborated testimony of a witness, standing in the relation of party to a suit, is not, under the law of 1848, which allows him to testify, entitled to full credit. The testimony of *Whitaker,* in this case, was not only uncorroborated, but was utterly irreconcilable with some of his own acts, and opposed to the whole current of evidence introduced by the plaintiffs. It ought not, therefore, to have received that degree of consideration, which it did, at the hands of the jury.

*Foster* and *E. Perkins,* contra, contended, 1. That the plaintiffs were not entitled to any verdict in this case, for the simple reason that they never attached the debt in question. The original writ held only such debts as *James Porter,* at that time, owed *A. C. Hall.* The statute of 1846, contemplates only an attachment binding on the trustee in his *official* capacity.

2. That if the copy left with *Porter,* was an attachment of funds in his hands, in his capacity of trustee, the lien created by it, was terminated, when the statute was repealed in 1848. The attachment was created by, and perished with, the statute.

3. That the verdict in this case was not so manifestly and palpably against the weight of evidence, as to authorize the court to set it aside, for that reason. *Bacon* v. *Parker,* 12 *Conn. R.* 212. *Lafflin* v. *Pomeroy,* 11 *Conn. R.* 440. In this case, the question submitted to the jury was, whether, at

the time of the attachment, the dividends on the four notes mentioned in the motion, belonged to *Whitaker, Hammond & Co.*, or to *A. C. Hall.* Upon that question the jury have passed ; and there is nothing in the evidence requiring the court to interfere with the verdict. The only evidence that these dividends belong to *Hall,* is, the fact that they were reported in his name, by the commissioners. Had they been reported in the name of *Whitaker, Hammond & Co.*, the plaintiffs would have had no evidence. This report is a proper subject of explanation ; and, as explained, by the testimony of *Whitaker, Morse* and *Warner*, and the conduct of *Hall,* and *W. H. & Co.*, stood before the jury, and now stands before the court, precisely the same as if the commissioners had reported their claims as they originally entered them, in the name of *W. H. & Co.* The motion of the plaintiffs rests on the claim that the title of *Whitaker, Hammond & Co.* is fraudulent, and the testimony of *Whitaker* false. The jury have found the title good, and the testimony true. The question is one peculiarly for the jury, never for the court.

STORRS, J. The plaintiffs move for a new trial in this case, on the ground that the verdict is against the evidence. They claimed, on the trial, to recover the whole amount of the original indebtedness from *Warner* to *Hall ;* but the jury gave them only a part of it.

The claim of the defendant, (that the remainder of such indebtedness was due to *Whitaker, Hammond & Co.*, at the time of the service of the process, in the original suit by the plaintiffs, against *Hall*, on the defendant,) and which constituted the defence, rested mainly on the testimony of *Whitaker* alone. It is conceded, that if *Whitaker* was not entitled to full credit, the defence was not made out ; and the question before us, therefore, depends on the credibility of this witness. His interest in the event of the suit ; the mode in which he caused the claims to be presented to the commissioners on the estate of *Warner ;* his conduct respecting the order on the defendant, procured by him from *Hall ;* the entries in the books of *Whitaker, Hammond & Co.;* his want of recollection as to some facts which it is presumable he would remember ; and some other circumstances of less weight, affecting his testimony, which it is unnecessary to detail ; constitute

*Windham,*
July, 1850.
_____
Babcock
*v.*
Porter.

proper topics of consideration, in estimating the credit due to him, and undoubtedly tend to detract from it. On the other hand, his general good character for veracity, which we have a right to infer, in the absence of any attempt to impeach it; the want of any evidence directly contradicting him; and his explanations of the most material facts which appeared to militate against the truth of his testimony; furnished evidence in his support. And it is to be considered, that several of the facts stated by him, which have been much commented on, by the plaintiffs' counsel, for the purpose of discrediting him, are not of a decisive character, but are susceptible of an explanation, compatible with the truth of his testimony as to the main fact which was the subject of enquiry, the title of *Whitaker, Hammond & Co.* to the claims in question. We refer to the presentation of the claims to the commissioners in the name of *Hall,* rather than of *Whitaker, Hammond & Co.;* the manner in which the transactions between *Hall* and *W. H. & Co.,* were entered on the books of the latter, and the procurement of the order, by *Whitaker* from *Hall.* These topics, and all the others suggested by the evidence bearing on the credibility of the witness, were fairly submitted to the jury, and considered by them; and although we might have come to a contrary conclusion, on this point, and have been better satisfied with a different result, we do not think that we are authorized to say, that their verdict was so manifestly and palpably wrong, that it should be disturbed.

This conclusion renders it unnecessary to consider the questions of law presented by the defendant, whether he was so described in the original writ of foreign attachment, that he could be subjected in the suit, as the trustee of *Warner;* and also, whether the repeal of the act of 1846, (*ch.* 23. *p.* 22.) extending the process of foreign attachment, in suits against assigning insolvent debtors, to their trustees, (by virtue of which act alone said original suit was brought,) destroyed the remedy of the plaintiffs, in the present action. These questions have been raised, by the defendant, not for the purpose of obtaining a new trial on his own behalf, which he does not move for, but only for the purpose of defeating this motion of the plaintiffs, in case the verdict should be considered as not sustained by the evidence.

A new trial is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.